IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**NAKEETA NIXON,**

    Plaintiff,

v.

**ZURICH AMERICAN INSURANCE COMPANY, ARNOLD TRANSPORTATION SERVICES, INC., and DOUGLAS LUCE,**

    Defendants.

Civil Action No. 7:15-CV-34 (HL)

# ORDER

This case arises out of a motor vehicle accident involving Plaintiff Nakeeta Nixon and Defendant Douglas Luce, who at the time of the accident was operating a tractor trailer owned by Defendant Arnold Transportation Services, Inc. and insured by Defendant Zurich American Insurance Company. The parties dispute liability.[1] Presently pending before the Court are the following motions: (1) Defendants' Motion to Strike Testimony of Plaintiff's Expert, Herman Hill (Doc. 19); (2) Plaintiff's Motion in Limine to Exclude Opinion Testimony of B.F. Williams (Doc. 27); (3) Plaintiff's Motion in Limine to Exclude Opinion Testimony of Deputies (Doc. 28); (4) Plaintiff's Motion in Limine to Exclude Opinion Testimony of James Sloan (Doc. 29).

---

[1] The parties did not file dispositive motions. Accordingly, the case currently is scheduled to be tried during the Court's April trial term, which commences April 25, 2016.

I. **FACTUAL BACKGROUND**

On February 25, 2013, Plaintiff Nakeeta Nixon and Defendant Douglas Luce ("Luce") were involved in a motor vehicle accident that occurred on South Central Avenue in Tifton, Georgia. The parties have adopted greatly diverging theories regarding the course of events leading to the accident, and liability remains in dispute. According to Plaintiff, it was raining the morning of the accident. (Pl. Dep., p. 55). She was driving in the inside, southbound lane, and Defendant Luce was traveling in the inside, northbound lane. (Id. at p. 60). Plaintiff recalls seeing Luce's tractor trailer cross over the railroad tracks. (Id.). Plaintiff believes that Luce failed to yield and to slow at the railroad crossing. (Id. at p. 65). As a result, the trailer then began "fish-tailing, jack-knifing, or whatever you call it." (Id. at 62). Defendant Luce's trailer crossed over the center lane and struck the front, driver's side of Plaintiff's vehicle. (Id. at 62, 66).

Plaintiff sustained significant injuries as a result of the collision. She experienced a brain bleed in two locations, impacting her speech. (Id. at p. 99). Her eyes, in particular her right eye, were injured, requiring surgery. (Id.). She suffered a cracked vertebrae and a punctured lung. (Id. at 99, 100). She required placement of a rod in her right femur and screws in her right knee. (Id. at 100). Her right ankle was crushed and had to be fused. (Id.).  Her left hip was broken.

(Id. at 101). As a result of nerve damage, Plaintiff also now experiences Drop Foot Syndrome. (Id.).

Other than the direction in which the vehicles were traveling, Defendants' version of events bears no resemblance to Plaintiff's. Defendant Luce's recollection is that he was traveling northbound in the outside, right hand lane of South Central Avenue at a rate of 30 to 35 miles per hour when he suddenly felt as though all 18 wheels of his trailer ruptured at one time. (Luce Dep., p. 42-43, 45). He never saw Plaintiff's vehicle. (Id. at p. 43, 49). He has no memory of crossing the railroad tracks. (Id. at p. 46-47). Luce recalls the surprise of the impact and that, unaware of what happened, he "just held – held on and slowly applied my brakes and eventually stopped." (Id. at p. 49). When he looked in his rearview mirror, he observed his trailer on the ground. (Id. at 51). Luce did not see Plaintiff's vehicle until he exited his truck and did not realize that he had been hit by another car. (Id. at p. 52, 56). He then discovered the tandems of his trailer lying in the middle of the four lane roadway approximately 50 to 100 feet from his trailer. (Id. at p. 56, 58).

Defendants submit that Plaintiff is responsible for the collision. Testimony from responding law enforcement officers as well as Defendants' expert witness suggests that Plaintiff made a sudden and severe left hand turn, causing her car

to travel from the outside southbound lane across the center line and into the outside northbound lane where she collided with Defendant Luce's trailer.

## II. <u>DAUBERT</u> STANDARD

A party relying on the testimony of a proposed expert witness bears the burden of laying, by a preponderance of the evidence, a foundation for the admission of its expert's testimony. <u>Corvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1256 (11th Cir. 2002) (quoting <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999)). Whether certain opinions may be offered as expert testimony is determined by the standard stated in Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

As the Supreme Court clarified in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, a trial court must act as a "gatekeeper" and test the reliability and relevancy of the proposed expert's opinions before determining whether they can be admitted as expert testimony. 509 U.S. 579, 589–93 (1993). The trial judge must undertake a "rigorous three-part inquiry" and decide whether: (1) a proposed expert is qualified to competently testify concerning his opinions; (2) his

methodology is sufficiently reliable; and (3) his testimony would assist the jury, through the application of scientific, specialized, or technical expertise, to determine a fact in issue or understand the evidence. United States v. Fazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

"A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001) (internal quotation and citation omitted). Rather the objective of the gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 152 (1999). And the district court has "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999).

### A. Defendants' Motion to Exclude Testimony of Herman Hill

Defendants move to exclude the expert testimony of Plaintiff's proffered expert, Herman Hill. Defendants do not question Hill's competence to testify as an expert witness. However, Defendants contest the admissibility of Hill's

5

testimony based on the methodology employed by Hill and the likelihood that Hill's opinion will assist the jury. First, Defendants contend that Hill's opinions are based upon insufficient facts and data and thus are inadmissible under Rule 702 and Daubert. Second, Defendant's argue that Hill formulated his opinions through the application of unreliable principles and methods. Finally, Defendant's aver that Hill's opinions will not assist the trier of fact in understanding the pertinent evidence in this case.

Plaintiff hired Hill as a rebuttal expert approximately two and a half years after the relevant collision. Thus, Hill did not have the benefit of performing any immediate onsite investigation of either the point of the collision or the vehicles involved in the accident. Instead, in forming his opinion, Hill relied upon the accident report; photographs of the scene and the vehicles; Google and computer generated images of the area in question; the materials produced by Defendant's expert, James Sloan; and the depositions of the parties, the reporting officers, and purported witnesses to the accident.

Because of the limited information available to Hill, he did not, nor was he asked, to perform a complete accident reconstruction. However, based on the information available to him, including his first hand observations of the subject roadway and railroad tracks, and applying his knowledge and experience as a trained engineer familiar with the principles of basic physics and dynamics, Hill

opined that the accident could not have occurred as Defendants have suggested. In Hill's estimation, the evidence does not support a finding that Plaintiff traveled across the roadway at the severe angle described by Defendants, a course Hill believes is not dynamically possible. In Hill's opinion, this accident is more accurately characterized as a side-swipe type collision whereby Plaintiff's car slid down the side of Defendant's trailer.

Because Hill lack of first hand observations and measurements, Defendants argue that Hill's opinions thus are implicitly based upon insufficient facts and data. The Court is not persuaded by Defendants' argument. Any concerns Defendants may have regarding what information Hill did or did not utilize in forming his opinions and how Hill's opinion may otherwise be impacted by his after-the-fact examination of the evidence may be sufficiently addressed through cross-examination.

Defendants next call into question Hill's methodology, arguing that Hill failed to apply reliable principles to the facts of the case. Defendants contend that Hill's testimony lacks any scientific basis because he has not undertaken any actual testing to demonstrate what speed and conditions would cause Plaintiff's vehicle to spin, as Hill postulate's Plaintiff's vehicle would have done had she undertaken the severe turn alleged by Defendants; to determine the amount of

force necessary for a vehicle to dislodge the tandem axle of a tractor-trailer; or to otherwise refute the evidence as described by Defendants' proffered experts.

The Court is unpersuaded by Defendants' argument that Hill's opinions are unreliable because he failed to perform any tests and, thus, that his opinions are based on mere speculation. In forming his opinions, Hill visited the actual site of the accident, albeit several years after the collision; took measurements of the scene; examined photographs of the positioning of the vehicles immediately following the accident, the damage sustained by each, and the debris left in the wake of the collision; and reviewed the accident report as well as the depositions of the parties and responding law enforcement personnel. Hill additionally scrutinized alleged gouge marks and reports of purported erasure, or skid marks, left by Plaintiff's vehicle. Relying on these observations, Hill formulated his side-swipe theory and presented his opinion that based on the laws of physics and the principles of dynamics, the accident could not have occurred as suggested by Defendants. No physical testing was necessary for Hill to form his opinions, and the lack of any such testing does not impact the reliability of Hill's opinions.

The Court also finds that Hill's opinions will be helpful to the jury in determining how this accident occurred. Hill's opinions are premised on tangible evidence and ascertainable scientific principles and sufficiently explain the issues he believes lie with Defendants' explanation of how the accident occurred. Any

concerns Defendants express regarding purported contradictions between Hill's opinions and the testimony of other witnesses ultimately go to the weight the jury may afford Hill's testimony and not its admissibility. Additionally, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Defendants' motion to exclude the expert opinion of Hill is thus denied.

### B.     Plaintiff's Motion to Exclude Testimony of B. F. Williams

Plaintiff moves to exclude portions of the testimony of B.F. Williams. Williams, a former State Trooper with the Georgia State Patrol, responded to the scene of the accident and was responsible for conducting an investigation into the cause of the collision. Based on his investigation, Williams concluded that Plaintiff was responsible for the accident and issued Plaintiff citations for failing to maintain her lane and driving too fast for conditions. While Williams admits ignorance regarding the speed that either Plaintiff or Defendant Luce was traveling at the time of the collision, Williams ascertained the Plaintiff must have been driving too fast for the wet conditions based solely on his understanding that Plaintiff's vehicle crossed the center line of the road.

Williams was also responsible for interviewing any witnesses to the accident. There is some dispute regarding whether Williams made any attempt to

communicate with Plaintiff, or even if Plaintiff was physically capable of communicating immediately following the accident. Williams did speak with Defendant Luce to gather his version of events. He also spoke with the Tift County Sheriff's deputies present at the scene. Then, based on that information, along with his personal observations of the wreckage, Williams prepared a report depicting Plaintiff's vehicle crossing from the outside, southbound land of Central Avenue into the northbound lane and striking Defendant Luce's trailer.

Plaintiff substantively argues that Williams' expert opinion regarding causation should be excluded because Williams' testimony "is nothing more than a conduit for the story of the defendant truck driver." (Doc. 27, p. 8). The Court agrees that to the extent that Williams simply repeats what was told to him by Defendant Luce or any of the deputies to arrive at his theory regarding how the accident transpired, his testimony should be excluded as hearsay. However, Williams, who served as a State Trooper for more than 20 years and who has extensive experience working in accident reconstruction, is more than qualified to testify about what he observed at the scene of the accident, including the position of the vehicles, the condition of the vehicles, the debris distributed in the roadway, and any markings in the road Williams identified. Williams is also competent to testify about his observations and interactions with various individuals he encountered during his investigation that influenced his opinion

regarding how the accident occurred. To the degree that Plaintiff believes that Williams' investigation may be in some way flawed or incomplete, any inconsistencies more accurately impact the weight of the evidence offered by Williams and not the admissibility, and Plaintiff may thoroughly explore any perceived gaps in Williams' testimony on cross-examination. Plaintiff's motion accordingly is granted in part and denied in part.

### C. Plaintiff's Motion to Exclude Testimony of Deputies James William Lindsey, Jeffrey Scott, and Lucas Garrett Jordan

Next, Plaintiff moves to exclude certain opinions offered by the Tift County Sheriff's deputies who responded to the accident, including James William Lindsey, Jeffrey Scott, and Lucas Garrett Jordan. Plaintiff objects to these witnesses offering any expert opinion regarding the cause of the accident. According to Plaintiff, none of the deputies performed an accident reconstruction, and none of them have any training in conducting an accident reconstruction. Plaintiff further contends that the deputies' testimony should be restricted only to what each personally observed, and they should not be able to repeat hearsay statements or to otherwise speculate about the cause of the accident under the guise of expert testimony.

As previously addressed in relation to State Trooper Williams, none of the deputies will be permitted to submit hearsay testimony. However, as agreed to by Plaintiff, the deputies may testify about what each personally observed and heard

at the scene of the accident. The deputies may further testify about what actions each took in response to the accident.

However, even though the Court finds that the deputies are qualified to offer their opinions regarding the significance of their observations and any reasonable conclusions they may have drawn, including any opinion regarding where the accident took place, the Court concludes that the deputies are not qualified to offer opinion concerning the cause of the accident. "[T]here is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." Pace v. Ntl. Union Fire Ins. Co. of Pittsburgh, 2014 WL 4976773, at *3 (N.D.Ga. Aug. 21, 2014) (quoting Santos v. Posadas de Puerto Rico Assoc., Inc., 452 F.3d 59, 63 (1st Cir. 2006)). "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Frazier, 387 F.3d at 1260-61. Rule 702 even contemplates that expert status may be founded on "knowledge, skill, experience, training, or education." Fed.R.Evid. 702 advisory committee's notes (2000 amends.) ("Nothing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony."). Nevertheless, while these seasoned deputies have experience responding the accident scenes and are knowledgeable about how to manage the scene and to gather evidence, there is no evidence that any of the deputies

have any knowledge, training, or experience in accident reconstruction rendering them qualified to offer any ultimate opinion regarding the cause of the accident. The Court, therefore, grants Plaintiff's motion to exclude any opinion testimony by the deputies concerning the cause of the accident.

### D.     Plaintiff's Motion to Exclude Testimony of James Sloan

Finally, Plaintiff moves to exclude the testimony of Defendants' expert, James Sloan. Sloan is a certified accident reconstructionist retained by Defendants within days of the subject collision. In addition to reviewing the accident report and the photographs made by the first responders, Sloan was able to visit the accident scene eight days following the event. He also personally inspected and took his own photographs of Defendant Luce's tractor and trailer as well as Plaintiff's vehicle. Sloan was able to identify a gouge mark in the right-hand, northbound lane he opines represents the point of contact between the vehicles and that the mark was created by the undercarriage of the right side of Plaintiff's automobile. Additionally, Sloan identified a scuff mark in the road that he believes was the result of Plaintiff making a severe turn. Extrapolating from the trail of physical evidence, Sloan concluded that Plaintiff's vehicle left the southbound lane and traveled into the northbound lane and into the side of Defendant Luce's trailer, thereby causing the accident.

Plaintiff does not question Sloan's qualifications as an expert reconstructionist, thus the Court concludes that Plaintiff concedes that Sloan is otherwise qualified. Instead, Plaintiff offers a generalized argument that Sloan's opinion is based on an erroneous interpretation of the evidence; that Sloan did not perform a complete reconstruction; and that Sloan's opinions are the result of speculation and not the product of reliable principles and methods. However, Plaintiff offers no argument to support these contentions beyond the mere assertion that Sloan's statements are based on insufficient data and premised on "junk science." (Doc. 29, p. 9). Plaintiff's motion to exclude Sloan's expert opinion ultimately boils down to a disagreement in the interpretation of the evidence, which is not sufficient to exclude Sloan's testimony. Accordingly, Plaintiff's motion to exclude Sloan's expert testimony is denied.

### III. Conclusion

For the foregoing reasons, the Court orders the following:

1. Defendants' Motion to Strike Testimony of Plaintiff's Expert, Herman Hill (Doc. 19) is denied.

2. Plaintiff's Motion in Limine to Exclude Opinion Testimony of B.F. Williams (Doc. 27) is granted in part and denied in part.

3. Plaintiff's Motion in Limine to Exclude Opinion Testimony of Deputies (Doc. 28) is granted.

4. Plaintiff's Motion in Limine to Exclude Opinion Testimony of James Sloan (Doc. 29) is denied.

**SO ORDERED**, this the 19th day of April, 2016.

                 *s/ Hugh Lawson*
                 **HUGH LAWSON, SENIOR JUDGE**

aks